# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ERIC THOMPSON, *et al.* | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   No. 3:07-00412 |
| | )   Judge Sharp |
| | ) |
| BRUISTER AND ASSOCIATES, INC., | ) |
| *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM

On August 10, 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: a Legacy for Users ("SAFETEA-LU"), PL 109-59. When Defendants Herbert C. Bruister ("Bruister") and Bruister and Associates, Inc. ("BAI") became aware of its enactment is significant because they may be insulated from overtime liability under the Fair Labor Standards Act ("FLSA") during the period between August 10, 2005, and August 9, 2006, by virtue of the SAFETEA-LU Technical Corrections Act ("TCA"), which was passed on June 6, 2008. It is also significant because this knowledge (or lack thereof) is at the core of an Order from Magistrate Judge Brown that Defendants have appealed, and is the centerpiece of cross-motions for summary judgment based upon the Motor Carrier Act exemption to the FLSA.

## I. BACKGROUND

Among the exemptions for overtime pay mandated by the FLSA is the one for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49[.]" 29 U.S.C.

1

§ 213(b)(1). That section is part of the Motor Carrier Act which, prior to August of 2005, defined a "motor private carrier" as "a person, other than a motor carrier, transporting property by motor vehicle when (A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, or rent or bailment to further a commercial enterprise." 49 U.S.C. 13102(15) (2000). "Motor vehicle," in turn, was defined broadly to include "a vehicle, machine, tractor, trailer or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, id. § 13102(6), and thus "'applied to all drivers operating in interstate commerce regardless of the weight of the vehicle driven.'" Bedoya v. Aventura Limousine & Transp. Serv., Inc., 2012 WL 3962935 at *2 (S.D. Fla. Sept. 11, 2012) (quoting, Buckner v. United Parcel Service, Inc., 2012 WL 1596726, at *4 (E.D.N.C. May 7, 2012)).

"That changed, however, with the passage of [SAFETEA-LU], which made the composition of a motor carrier's fleet highly relevant to the question of whether its employees were entitled to overtime." Id. Specifically, "[t]his amendment had the effect of altering the class of employees exempt from the FLSA and removing from the Secretary of Transportation's jurisdiction any employee who did not operate a commercial motor vehicle," that is, vehicles having 'a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds.'" Westberry v. William Joule Marine Transport, Inc., 2013 WL 656327 at *3 (M.D. Fla. Feb. 22, 2013) (quoting, 49 U.S.C. § 31132(1)(A)).

The subsequent passage of the TCA, in turn, brought "two important changes[:]

First, it restored the previous definition of "motor carrier" to "a person providing motor vehicle transportation, which expanded the scope of the Department of Transportation's authority to entities that operated any kind of vehicle. . . . .The second change the TCA set in place retained the centrality of a vehicle's capacity and

2

weight to the question whether an employee was entitled to overtime. This portion of the TCA provides, in relevant part, that a "covered employee", to wit, an individual whose work, in whole or in part, requires the operation of vehicles that weigh less than 10,001 pounds, is entitled to overtime notwithstanding the MCA exemption.

Id. at **3-4 (internal citations omitted). "Thus, for the time period between August 10, 2005 and June 6, 2008, many employees who had been exempt from the FLSA's overtime provisions under the MCA exemption were no longer exempt." Albanil v. Coast 2 Coast, Inc., 444 Fed. Appx. 788, 795 (5th Cir. 2011).

"However, the TCA included a safe harbor period of one year, from August 10, 2005, to August 9, 2006, for any failure by an employer to pay overtime compensation pursuant to the FLSA by employers who did not have actual knowledge that the scope of the exemption had changed when the SAFETEA-LU was enacted in 2005." Id. This safe harbor provision was enacted to protect the "innocent employer." See, Benoit v. Tri-Wire Engineering Solutions, Inc., 612 F. Supp.2d 84, 88 (D. Mass. 2009); Scott v. Raudin McCormick, Inc., 2009 WL 3561301 at *9 (D. Kan. 2009).

Against this statutory backdrop, Plaintiffs filed a Motion for Partial Summary Judgment (Docket No. 410) by which they sought partial summary judgment and a finding "that the Motor Carrier Act exemption is not applicable to Plaintiffs' claims for all time periods after August 10, 2005 because the enactment of [SAFETEA-LU] unequivocally limited the application of the FLSA's Motor Carrier Act exemption to include workers who drive vehicles weighing at least 10,001 pounds." (Docket No. 411 at 1). Plaintiffs also argued that Defendants had "actual knowledge of the passage of SAFETEA-LU around the time that it was enacted," (id. at 5) as evidenced by the following interrogatory and response:

> **INTERROGATORY NO. 77** – Identify the date and method by which you, BAI or any of its agents, managers, owners, directors or attorneys learned of the passage of

3

Case 3:07-cv-00412   Document 807   Filed 03/15/13   Page 3 of 11 PageID #: 16146

> the Safe, Accountable, Flexible, Efficient, Transportation Equity Act: a Legacy for Users (SAFETEA-LU), PL 109-59, or its affect in limiting the application of the FLSA's "Motor Carrier Act" exemption to include workers who drive vehicles weighing at least 10,001 pounds and state all communications regarding such act or its affect on the "Motor Carrier Act" exemption, including communications from legal counsel.
>
> **RESPONSE** – Defendant incorporates his General Objections as if fully set forth herein. Defendant further objects to Interrogatory No. 77 to the extent that it seeks information protected from disclosure by the attorney-client privilege, the common-interests privilege, and/or self-critical analysis privilege, and/or seeks to disclose defense counsel's mental impressions. Mr. Bruister further objects to Interrogatory No. 77 because it is overbroad, unduly burdensome and harassing.
>
> Subject to and without waiving the stated objections, Mr. Bruister states that he learned of the passage of the Safe, Accountable, Flexible, Efficient, Transportation Act: a Legacy for Users (SAFETEA-LU) from BAI's counsel around the time the Act was passed.

(Docket No. 712-3 at 6 & 7). By Order entered September 8, 2010 (Docket No. 430), Judge Haynes denied Plaintiffs' Motion for Partial Summary Judgment without prejudice to its renewal after the close of discovery.

After discovery closed, Defendants filed their own motion for summary judgment based on the Motor Carrier Act, claiming that they were entitled to the safe harbor provision of the TCA. In doing so, they relied upon their supplemental response to interrogatory number 77 that read:

> **SUPPLEMENTAL RESPONSE** – Mr. Bruister hereby amends his prior Response to Interrogatory No. 77. . . Mr. Bruister states that he mistakenly responded to Interrogatory No. 77, believing that Interrogatory No. 77 referred to what he now believes to be called the *Safe, Accountable, Flexible, Efficient Transportation Equity Act: a Legacy for Users Technical Corrections Act of 2008* (the "Technical Corrections Act"). Mr. Bruister learned of the passage of the Technical Corrections Act sometime after it was passed on June 6, 2008, when he was advised of the passage. Mr. Bruister is not aware of the exact date on which he learned of the passage of the Technical Corrections Act. Mr. Bruister became aware, within months of the passage of the Technical Corrections Act, that there might have been a change in the Motor Carrier Act exemption, what he now believes to be called the Safe, Accountable, Flexible, Efficient, Transportation Equity Act: a Legacy for Users ("SAFETEA-LU"), as that relates to "covered employees". . . . Mr. Bruister attended

4

> a thirty-minute lunch meeting with Senator M. McConnell in Maysville, Kentucky, while Mr. Bruister was otherwise in Maysville, Kentucky, at which the effect of SAFETEA-LU on the Motor Carrier Act exemption was briefly discussed, among several other matters affecting small business owners. The lunch meeting occurred on or about February 20, 2008. Prior to then, Mr. Bruister does not believe he was aware of any change in what the Technical Corrections Act refers to as a "covered employee". *The earliest date on which he would have had such knowledge would have been after the filing of this lawsuit (April 24, 2007).*

(Docket No. 415-2 at 7, italics in original).[1]

After Defendants filed their motion for partial summary judgment, Plaintiffs moved to strike the same, arguing that it was based upon a "sham" discovery response.[2] Contemporaneously therewith, Plaintiffs filed their response to Defendants' motion, as well as a cross-motion for partial summary judgment on the Motor Carrier Act exemption defense. This filing, in turn, prompted Defendants to file their own motion to strike in which they asserted Plaintiffs' cross-motion was filed outside the time limits for dispositive motions.

In his Order, Magistrate Judge Brown granted Plaintiffs' motion to strike and denied Defendants' motion to strike. Anticipating that Defendants would appeal those rulings, Magistrate Judge Brown also suggested that Defendants should respond to Plaintiffs' cross motion for summary judgment so that both the objections and the response would be before the Court at the same time. Defendants complied with that suggestion, and both Defendants' appeal and the cross-motions for partial summary judgment are ripe for review.

---

[1] Defendants raised the same arguments and relied on the same supplemental interrogatory in response to Plaintiffs' original motion for partial summary judgment on the Motor Carrier Act exemption which Plaintiffs moved to strike. In his Order, Judge Haynes denied Plaintiffs' motion to strike the supplemental interrogatory response, pending the completion of discovery.

[2] The Court notes that Interrogatory No. 77 was propounded to Defendant Bruister. However, an identical interrogatory (Interrogatory No. 44) was propounded to Defendant BAI, which responded the same as Defendant Bruister and filed an identical supplemental response. For ease of discussion, the Court will refer only to Interrogatory No. 77 and the responses thereto.

5

## II. DISCUSSION

This Court's review of Magistrate Judge Brown's non-dispositive Order is governed by Rule 72(a) of the Federal Rules of Civil Procedure which provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Magistrate Judge Brown's denial of Defendants' motion to strike and granting of Plaintiffs' motion to strike is neither.[3]

With regard to Plaintiffs' motion to strike, Magistrate Judge Brown found that Defendants' Supplemental Interrogatory Response # 77 was effectively a "sham," interjected in an to attempt to raise a genuine issue of material fact so as to thwart Plaintiffs' motion for summary judgment on the Motor Carrier Act exemption. In doing so, he found it significant that the supposed reason for the changed interrogatory response was not supported by an affidavit from prior counsel who informed Bruister about the enactment of SAFETEA. As for Defendants' motion to strike, Magistrate Judge Brown found that Plaintiffs' late filing of their own motion for summary judgment was understandable given that "the Bruister Defendants reopened th[e] can of worms that Judge Haynes had at least temporarily put to rest" by filing a summary judgment motion that relied upon the "sham" interrogatory response. (Docket No. 793 at 3). Magistrate Judge Brown also opined that Defendants were not prejudiced by Plaintiffs' filing of a cross motion for summary judgment.

Taking the last ruling first, Magistrate Judge Brown did not err in denying Defendants' motion to strike, even though Plaintiff's cross motion for partial summary judgment was filed after the October 5, 2012, dispositive motion deadline set in this case. After all, Rule 16 provides that

---

[3] The Court notes that its Local Rules also provide for the rejection of a Magistrate Judge's non-dispositive Order where it is "in the interests of justice." L.R. 72.02(a). In addition to finding no clear error or a misapplication of law, the Court finds that it would not be in the interest of justice to modify Magistrate Judge Brown's Order.

6

a scheduling order may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In determining whether good cause exists, courts consider "the diligence of the party seeking the extension" and "whether the opposing party will suffer prejudice by virtue of the amendment." Leary v. Daeschner, 349 F.3d 888, 906 (6th Cir. 2003). A decision to change (or refuse to change) a scheduling order is a matter of discretion. See, Bentkowski v. Scene Magazine, 637 F.3d 689, 696 (6th Cir. 2011); Commerce Benefits Group, Inc. v. McKesson Corp., 326 Fed. Appx. 369, 377 (6th Cir. 2009).

Defendants filed their motion for summary judgment on the Motor Carrier Act exemption on the very last day for filing dispositive motions. This motion likely took Plaintiffs by surprise since Defendants had not moved for summary judgment in response to Plaintiff's original motion, and Defendants relied upon a discovery response that Plaintiffs had challenged previously as being a "sham."

Regardless, Plaintiffs' filing of a cross motion for summary judgment is not prejudicial to Defendants because Magistrate Judge Brown provided them fourteen days to file a response and, more importantly, Rule 56(f) by its very terms provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for the nonmovant[.]" Fed. R. Civ. P. 56(a).[4] Here, the Court would have been very aware from Plaintiffs' response to Defendants' motion for summary judgment that Defendants were relying upon what Plaintifs' viewed to be a bogus supplementary interrogatory response, and would have before it both interrogatory responses when it ruled on Defendants' motion. Given this record, the Court cannot conclude that Magistrate

---

[4] Defendants are also not prejudiced because, as it turns out, the Court will deny Plaintiffs' cross motion for partial summary judgment.

7

Judge Brown clearly erred or acted contrary to law when he denied Defendants' motion to strike.

Nor did Magistrate Judge Brown err in granting Plaintiffs' motion to strike. The Sixth Circuit has repeatedly warned litigants about utilizing contradictory averments to raise factual disputes in an effort to stave of summary judgment. See, e.g., Trout v. First Energy Gene. Corp., 339 Fed. Appx. 560, 566 (6th Cir. 2009); Kelso v. City of Toledo, 77 Fed. Appx. 826, 834 (6th Cir. 2003); Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir. 1986); Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir.1984).

In Aerel, S.R.L. v. PCC Airfoils, LLC, 448 F.3d 899, 908 (6th Cir. 2006), the Sixth Circuit thoroughly discussed what has come to be known as the "sham affidavit rule" which holds that a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts earlier deposition testimony. Interpreting and applying the authority that had developed in the area, the Sixth Circuit wrote:

> . . . a district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. . . . A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. . . . If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit "constitutes an attempt to create a sham fact issue."

Id. at 908 (internal citations omitted). The court then went on to set forth a "nonexhaustive list of factors" for determining "the existence of a sham fact issue [including] 'whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.'" Id. at 908-09 (citation omitted).

8

While Aerel and the other cited cases dealt with affidavits that contradict prior deposition testimony, "'[t]he sham affidavit rule precludes [a party] from creating a genuine dispute of material fact by contradicting its prior interrogatory answers.'" Dunavant v. Frito Lay, 2013 WL 816673 at * 4 (M.D. Tenn. Mar. 5, 2013) (citation omitted, collecting cases). Indeed, the "sham affidavit" rule may be even more appropriate where a party submits contradictory interrogatory responses because those responses, unlike deposition answers, are generally provided after considerable thought and drafted with the assistance of counsel.

Here, Defendants' supplemental interrogatory response directly contradicted the initial response. Interrogatory No. 77 was straightforward and Defendants' response thereto was equally straightforward. Plaintiffs asked when Defendants learned of SAFETEA-LU and Defendant stated that they learned of it shortly after its passage. In the supplementary response, however, Defendants claim that they misread the interrogatory, that what they thought it was referring to was the TCA, and that, oh, by the way, they learned of its passage not from counsel, but from Senator McConnell during a luncheon in Maysville, Kentucky years after passage of SAFETEA-LU.

Even if the supplementary interrogatory response is deemed not to directly contradict the original response, Magistrate Judge Brown did not err in striking the same because it was clearly interjected in "an attempt to create a sham fact issue." Aerel, 448 F.3d at 908. Indeed, the interrogatory was signed on August 18, 2010, the very day that Defendants responded to Plaintiffs' original motion for partial summary judgment on the Motor Carrier Act exemption, a motion that hinged on Defendants' concession that they learned of SAFETEA-LU from counsel at around the time that it was enacted. While Defendants feign confusion, Interrogatory No. 77 could not have been clearer, and Defendants knew at the time the question was propounded from whom they

9

learned about the enactment of SAFETEA-LU and/or the TCA.

The conclusion that Magistrate Judge Brown's Order should be affirmed and that Defendants' supplemental response should be stricken makes resolution of Defendants' motion for summary judgment much more simple because it is grounded on their assertion that they did not learn of SAFETE-LU until long after it was passed. The striking of the supplemental response does not mean, however, that Plaintiffs are entitled to summary judgment on the Motor Carrier Act exemption.

In moving for summary judgment, Plaintiffs point out that the safe harbor provision exempts from liability for overtime compensation employers who did not have "actual knowledge" about the passage of SAFETEA-LU and that Defendants' original response to Interrogatory No. 77 establishes that they knew, shortly after its passage, that SAFETEA-LU had been enacted.

Contrary to the gloss placed on it by Plaintiffs, the safe harbor provision requires more than simple knowledge of passage of the Act. The safe harbor provision states:

> (1) LIMITATION ON LIABILITY.—An employer shall not be liable for a violation of section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) with respect to a covered employee if-
>
> > (A) the violation occurred in the 1–year period beginning on August 10, 2005; and
> >
> > (B) as of the date of the violation, the employer did not have actual knowledge that the employer was subject to the requirements of such section with respect to the covered employee.

Pub.L. No. 110–244, 122 Stat. 1572 § 306(b)(1) (emphasis added).

Defendants' initial response to Plaintiffs' Interrogatory No. 77 simply does answer the question of whether they had "actual knowledge" that they were subject to SAFETEA-LU with respect to covered employees, nor does the evidentiary record which has been presented definitively

10

answer that question. As such Plaintiff's cross motion for partial summary judgment will be denied.

### III. CONCLUSION

On the basis of the foregoing, Magistrate Judge Brown's Order will be affirmed, and the parties' cross motions for partial summary judgment on the Motor Carrier Act exemption will be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE