UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **ERIC THOMPSON,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | No. 3:07-00412 |
| ) | Judge Sharp |
| ) | |
| **BRUISTER AND ASSOCIATES, INC.,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Defendants have filed Motions for Summary Judgment Against Plaintiffs Aaron Beaty, Bobby Farris, Jimmy Jett, and Robert Tyner (Docket Nos. 607, 610, 613, 615, 619, 620, 621 & 622), seeking to bar their claims under the doctrine of judicial estoppel. Those Motions have been fully briefed by the parties.

## I. BACKGROUND

The relevant facts as to each Plaintiff are undisputed and substantially similar:

### A. Aaron Beaty

Beaty filed his consent to join this action on April 25, 2008, requesting damages for unpaid wages. Prior to doing so, and on two separate occasions – May 29, 2009, and September 23, 2011, – Beaty, represented by counsel, filed Chapter 13 Voluntary Bankruptcy Petitions in the Bankruptcy Court for the Eastern District of Tennessee. Despite being required to do so, Beaty did not list this litigation on his schedules as a contingent or unliquidated claim. The Bankruptcy Court entered Orders confirming Beaty's bankruptcy plans on July 10, 2009, and September 27, 2011,

2

respectively. At no time during the bankruptcy proceedings did Beaty disclose his FLSA claims against DirecTV or any other defendant, despite the fact that he joined this lawsuit before filing both bankruptcy petitions.

**B. Bobby Farris**

Farris filed his consent to join this action on January 30, 2008. Represented by counsel, he filed a Chapter 7 Voluntary Bankruptcy on November 29, 2010, in the Bankruptcy Court for the Northern District of Mississippi, but did not list this litigation as a contingent or unliquidated claim. The Bankruptcy Court entered an Order discharging his debts on March 14, 2011. At no time during the bankruptcy proceedings did Farris disclose his FLSA claims against DirecTV or any other Defendant, despite the fact that he joined this lawsuit well before filing for bankruptcy.

**C. Jimmy Jett**

Jett last worked for BAI on August 23, 2007. On February 14, 2008, Jett, through an attorney, filed a Chapter 7 Voluntary Bankruptcy Petition in the Bankruptcy Court for the Northern District of Alabama. While the bankruptcy case was pending, he consented to join this action on April 29, 2008. Jett's debts were discharged by the Bankruptcy Court order on May 28, 2008. At no time during the bankruptcy proceedings did Jett disclose his FLSA claims against the DirecTV or any other Defendant, despite the fact that he joined this lawsuit while his bankruptcy case still was pending.

**D. Robert J. Tyner**

Tyner filed his consent to join this action on June 13, 2008. Represented by counsel, he filed a Chapter 7 Voluntary Bankruptcy Petition in Bankruptcy Court for the Northern District of Alabama on July 30, 2009. Tyner checked "NONE" with respect to the question on his bankruptcy

3

petition as to whether he had any contingent or unliquidated claims of any nature. The Bankruptcy Court entered an Order discharging his debts on November 16, 2009. At no time during the bankruptcy proceedings did Tyner disclose his FLSA claims against DirecTV or any other defendant, despite the fact that he joined this lawsuit more than a year prior to filing for bankruptcy.

## II. DISCUSSION

The Sixth Circuit "has stressed that the doctrine of judicial estoppel is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002) (quoting, Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)). "Though there are no 'inflexible prerequisites' for judicial estoppel," the Sixth Circuit has "applied the doctrine to bar employment related claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence." Kimberlin v. Dollar Gen'l Corp., 2013 WL 1136564 at *2 (March 20, 2013).[1] "Applying judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests." Id.

Plaintiffs do not dispute any of the facts presented by Defendants and effectively concede that they filed bankruptcy and did not inform the bankruptcy court of this litigation at any time. Nevertheless, they argue that dismissal of this case is unwarranted as to the claims of Farris, Jett and

---

[1] Encompassed within the third prong is an inquiry into the absence of "bad faith." White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 478 (6th Cir. 2010).

4

Tyner for four reasons.[2]

First, Plaintiffs argue that applying "the judicial estoppel doctrine would be particularly inequitable because it would give defendants the benefit of their wrong-doing." (Docket No. 740). In this regard they argue that had Defendants paid them as required by law, they may not have needed to file bankruptcy.

Even assuming Plaintiffs' omissions ultimately works to the benefit of Defendants, "[t]he success of our bankruptcy laws requires a debtor's full and honest disclosure," Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002), and, as noted, "[t]he *raison d'etre* of the doctrine is 'to protect the integrity of the judicial process.'" Watkins v. Bailey, 484 Fed. App'x 18, 24 (6th Cir. 2012). It has been "described . . . as a rule against 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' or 'hav[ing] [one's] cake and eat[ing] it too.'" Lewis v. Weyerhaeuser Co., 141 Fed. App'x 420, 424 (6th Cir. 2005) (alteration in original) (quoting, Reynolds v. Comm'r, 861 F.2d 469, 472 (6th Cir. 1988)).

Second, Plaintiffs argue that Defendants' motions are defective because they "do not present any *evidence* that plaintiffs' omissions were **not** the result of mere mistakes or inadvertent conduct, or any *evidence* indicating the presence of bad faith." (Docket No. 740, italics and bold in original). However, the "court's 'absence of bad faith' inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim." Kimberlin, 2013 WL 1136564 at *3. Thus, even though Defendants are the movants, where they show knowledge of a claim, omission of that claim, and motive (*e.g.* to prevent the claim from being a part of the bankruptcy

---

[2] Plaintiffs have filed no response in opposition to Defendants' Motions for Summary Judgment with respect to Beatty.

5

estate), it is incumbent upon Plaintiffs to "point out evidence that shows an absence of bad faith (in particular, through [their] attempts to correct [their] initial omission) and that [their] omission resulted from inadvertence or mistake and was not intentional." White, 617 F.3d at 478 n. 2.[3] "Indeed, '[t]o survive summary judgment, the plaintiff must present affirmative evidence sufficient to show a genuine issue for trial.'" Id. (quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). What was done (or not done) to apprise the bankruptcy trustees of the existence of this litigation is knowledge peculiarly within the province of the Plaintiffs, not Defendants, and Plaintiffs have not presented evidence that they informed the bankruptcy courts of this case at any time prior to the filing of the Motions for Summary Judgment which brought their omissions to light.

Third, Plaintiffs argue that "Jett and Tyner's bankruptcy trustees have not yet addressed whether they desire to pursue these claims," and that "Farris' trustee has notified plaintiffs' counsel that he wishes to pursue Farris' claim and, as such, opposes the instant motion for summary judgment with respect to Farris." (Docket No. 740 at 2). Plaintiffs then observe that "the Sixth Circuit recently determined that a plaintiff's 'failure to disclose his claims does not bar the trustee from pursuing them," id. at 2-3, citing Stephenson v. Malloy, 700 F.3d 265 (6th Cir. 2013).

In Stephenson, the Sixth Circuit joined several other circuits that had "concluded that judicial estoppel does not bar a bankruptcy trustee from pursing claims that the debtor failed to disclose."

---

[3] As the Sixth Circuit pointed out in White, debtors have a motive for concealment because "if the . . . claim became a part of [the] bankruptcy estate, then the proceeds from it could go towards paying the [debtor's] creditors[.]" White, 617 F.3d at 479. In so stating, White cited Lewis, 141 Fed.Appx. at 426, for the proposition that "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." See, Clarke v. United Parcel Service, Inc., 421 B.R. 436, 441 (W.D.Tenn. 2010) (citation omitted) ("A motive to conceal can be inferred from the omission itself, because '[b]y omitting the claims, [the debtor] could keep any proceeds for herself and not have them become part of the bankruptcy estate.'")

6

Id. The underlying rational for the conclusion is that a bankruptcy trustee who pursues a claim does so on behalf of the estate and that, even if the plaintiff fails to disclose the matter, the trustee has not made a false or inconsistent statement under oath, nor is he "tainted or burdened by the debtor's misconduct.'" Id., (quoting, In re Parker, 365 F.3d 1268, 1272 (11th Cir. 2004)).

Tellingly, the trustee in Stephenson "had been substituted as the real party in interest," id. at 267, and submitted an affidavit about his early knowledge of the claim to the district court. The district court also had before it documents and an affidavit from plaintiff's counsel about prior discussions regarding the claims between counsel and the trustee.

Here, there is no evidence that the trustee was informed about the pendency of this case before the Motions for Summary Judgment were filed. Nor is there any evidence about what the trustees' actual intentions are regarding this case and these Plaintiffs' claims. Although Plaintiffs claim that "[t]o the extent necessary, [they] will substitute the trustees as the parties in interest," (Docket No. 740 at 2 n.2) they have made no effort to do so, even though the Motions for Summary Judgment were filed some ten months ago.

Fourth and finally, Plaintiffs argue that "[r]ather than taking the draconian sanction of dismissing Jett, Farris, and Tyner, the Court could, instead, put measures in place to ensure that in the event that there is a recovery for these three Plaintiffs, that the bankruptcy court or trustee be so notified and plaintiff's bankruptcy proceedings re-opened, if necessary, before these three plaintiffs recover any damages in this case." (Docket No. 740 at 3). While that conceivably is something the Court could do, it runs against the following observations made in White:

> The dissent argues that we should effectively put White in the position she would have been in had she properly disclosed her harassment claim in her initial bankruptcy filings. Thus, the harassment claim should proceed and any proceeds from the harassment claim would go into the bankruptcy estate: they would go first

7

> to White's creditors and then, if any amount was left over, to White. This would, effectively, allow White to avoid the consequences of failing to disclose her harassment claim. We do not believe that this is the proper course of action in this case and that this "so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.". . . Furthermore, we note that this court has previously applied judicial estoppel in similar circumstances, even though the result prevented recovery by bankruptcy creditors.

White, 617 F.3d at 481 n.10 (internal citation omitted); see, Burnes, 291 F.3d at 1288 ("Allowing plaintiff to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them").

### III. CONCLUSION

On the basis of the foregoing, Defendants' Motions for Summary Judgment Against Plaintiffs Beaty, Farris, Jett, and Tyner will be granted, and those Plaintiffs will be dismissed from this action.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

8