# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

ERIC THOMPSON, *et al.*,     )
     )
     Plaintiffs,     )
     )
     v.     )     No. 3:07-00412
     )     Judge Sharp
     )
BRUISTER AND ASSOCIATES, INC.,     )
*et al.*,     )
     )
     Defendants.     )

## MEMORANDUM

By Order and Memorandum (Docket Nos. 884 & 885) entered on August 23, 2013, the Court denied Motions to Decertify (Docket Nos. 674 and 676) and Motions to Dismiss the Collective Action (Docket Nos. 604 and 605) filed by Defendants DirecTV, Bruister and Associates, Inc. ("BAI"), and Herbert C. Bruister. Those Defendants have now filed a Motion to Stay and for Certification of that Order to the United States Court of Appeals for the Sixth Circuit. Also pending is Defendant DirecTV's Motion to Stay and for Certification of Appeal (Docket No. 919) of this Court's Order and Memorandum (Docket Nos. 811 & 812) in which the Court found that DirectTV was a successor employer to BAI for purposes of the claims in this action under the Fair Labor Standards Act.

For the reasons that follow, the Court will grant the joint motion to certify this Court's August 23, 2013, Order and Memorandum under 28 U.S.C. § 1292(b) to the extent that it denied Defendants' request that this collective action be decertified, but will deny Defendant DirecTV's motion to certify the successor liability issue.

1

So far as relevant, Section 1292 of Title 28 provides:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). "Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals." Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 47 (1995). "Once such a certification occurs, the court of appeals may in its discretion accept the certification – and appeal." In re Lindsey, ___ F.3d ___, ___, 2013 WL 4055273 at *1 (6th Cir. Aug. 13, 2013).

"Review under § 1292(b) is granted sparingly and only in exceptional cases." In re City of Memphis, 293 F.3d 345, 350 (6th Cir. 2002). Such review is appropriate where "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." Id.

## II.

On March 15, 2013, this Court entered an opinion that addressed the question, "as yet unanswered by the Sixth Circuit," as "to whether successor liability exists under the Fair Labor Standards Act." (Docket No. 1). Ultimately, the Court answered the question in the affirmative, finding that DirecTV is a successor to BAI. DirecTV seeks certification of that decision for

interlocutory appeal.

No doubt, the determination that successor liability exists involves a controlling question of law so far as DirecTV is concerned because it directly affects whether it will be liable for damages should Plaintiffs ultimately prevail. However, and leaving aside that it took DirecTV more than six months to file its request for an "immediate appeal," DirecTV has not established that a substantial ground for difference of opinion exists, so as to call this Court's conclusion into question.

"District courts in this circuit have interpreted 'a substantial ground for difference of opinion . . . regarding the correctness of the decision' to mean when '(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.'" In re Miedzianowski, ___ F.3d ___, ___ 2013 WL 4436545 (6th Cir. Aug. 20, 2013) (quoting, City of Dearborn v. Comcast of Mich. III, Inc., No. 08–10156, 2008 WL 5084203 at *3 (E.D. Mich. Nov. 24, 2008)). Here, as this Court pointed out in its decision, while the Sixth Circuit (like most Circuits) has not addressed the issue of successor liability under the FLSA, it has adopted the federal common law of successor liability in employment law cases, including Title VII. EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1090-91 (6th Cir. 1974). In fact, the multi-factor approach developed in MacMillan was codified for use in the FMLA, and the Sixth Circuit has repeatedly observed that Congress intended similar remedies for both the FLSA and the FMLA. See, Chandler v. Specialty Tires of America, Inc., 283 F.3d 818, 827 (6th Cir. 2002); Frizzell v. Southwest Motor Freight, 154 F.3d 641, 644 (6th Cir. 1998).

Moreover, DirecTV fails to cite a single opinion where successor liability has been rejected

3

as a matter of law in an FLSA case, yet there are many cases which recognize the doctrine's applicability to FLSA cases. This includes the Ninth Circuit in Steinbach v. Hubbard, 51 F.3d 843 (9th Cir. 1995), and, more recently, the Seventh Circuit in Teed v. Thomas & Betts Power Solutions, LLC, 711 F.3d 763 (7th Cir. 2013).

DirecTV alternatively argues that "[e]ven if the Court properly found that the FLSA encompasses successor liability, imposing successor liability upon DIRECTV is wholly inappropriate as a matter of law," because this Court allegedly improperly applied the factors to be considered in finding successor liability as set forth in Cobb v. Contract Transport, Inc., 452 F.3d 543, 551 (6th Cir. 2006). Whether or not the Court properly applied the governing law to the facts presented is not the basis for an interlocutory appeal under § 1292(b); this is the grist of an ordinary appeal. See, McFarlin v. Conseco Serv. LLC, 381 F.3d 1251, 1259 (11th Cir. 2004) ("The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case.").

The Court will not certify the successor liability issue for interlocutory appeal.

### III.

In an Order and accompanying 26-page Memorandum, this Court denied Defendants' Motions to Decertify and Motions to Dismiss the Collective Action. In doing so, the Court addressed Defendants' myriad arguments, along with the recent decision of the United States Court of Appeals for the Seventh Circuit in Espenscheid v. DirectSat USA, LLC, 705 F.3d 770 (7th Cir. 2013), which upheld decertification in a case involving cable installers.

Summarizing Espenscheid, this Court wrote:

> In Espenscheid, some 2,300 cable technicians brought an FLSA action, alleging their employer failed to pay them for all hours worked. The technicians

4

were piece-rate workers and they claimed (like the technicians here) that they were not paid for such tasks they performed on their own time, such as calling customers, filling out paperwork, and picking up tools from the warehouse.

In noting the problems inherent in determining piece-rate wages across-the-board, the Seventh Circuit wrote:

> When one is paid by the job rather than by the hour, the hourly wage varies from job to job and worker to worker. Suppose the same job, for which the piece rate is $500, is completed by one worker in 30 hours (and it is the only job he does that week) and by another in 60 hours (also in a week). The hourly wage of the first worker, $16.67, will be well above the minimum wage, and as he has no overtime either, he has no damages. The hourly wage of the second worker, $8.33, is also above the minimum wage, but he is entitled to 1.5 times that amount for 20 of his 60 hours and thus to a total wage of $583.10 (($8.33 x 40) + ($8.33 x 1.5 x 20)), making his damages $83.10 if DirectSat paid him only $500 for the job. The plaintiffs have not indicated how their method of "representative" proof would enable these workers to be separated when it came time to calculate damages.

Id. at 774. The court went on to point out that a "further complication is presented by a worker who underreported his time, but did so . . . not under pressure by DirectSat but because he wanted to impress the company with his efficiency." Id. Still "[a] further complication is that the technicians have no records of the amount of time they worked but didn't report on their time sheets," and this was a problem which could not be addressed based upon the "evidence of a small, unrepresentative sample of technicians." Id. at 775.

(Docket No. 884 at 15-16).

Despite the fact that Espenscheid presented many of the same sorts of issues presented here, the Court declined to decertify the collective action for a number of reasons. That determination coupled with the Supreme Court's recent decisions in Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013) and Wal-Mart Store, Inc. v. Dukes, 131 S.Ct. 2541 (2011), lead this Court to conclude that this is an exceptional case involving a controlling question of law, there exist substantial ground for a difference of opinion regarding the denial of decertification of the collective action, and an interim

5

appeal will unquestionably aid in a final resolution of this case.

## A.

"A legal issue is controlling if it could materially affect the outcome of the case," and "generally, [this] does not include matters within the discretion of the trial court."  In re City of Memphis, 293 F.3d at 251.  However "[t]his not to say that 'no district court order involving some exercise of discretion may be reviewed in a § 1292(b) appeal,'" and, while "appellate review of class certification decisions under § 1292(b) is and will be rare," it is possible.  Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1387 & n.2 (11th Cir. 1998).

In this regard, the Court finds it significant that Rule 23 of the Federal Rules of Civil Procedure gives  appellate courts the power to permit an "appeal from an order granting or denying class-action certification," Fed. R. Civ. P. 23(f), even though the decision to certify a  class is a matter of discretion, yet no comparable rule exists for reviewing the grant or denial of collective action status under 29 U.S.C. § 216(b).  The adoption of Rule 23(f) in 1998 "was designed to allow the circuit courts 'to develop standards for granting review that reflect the changing areas of uncertainty in class litigation," and, review of a certification decision is allowed "not because of the rulings 'finality,' but because of 'hardship' that may otherwise result to one side or the other."  Dealer Computer Serv. Inc. v. Dub Herring Ford, 623 F.3d 348, 343 (6th Cir. 2010) (citation omitted); see, id. at 362 (Mays, D.J, dissenting) ("the grant or denial of class certification often has the effect of a final ruling on the merits [because if] a court denies certification, plaintiffs will often drop their claims; if a court grants it, the defendants may settle"); Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich., 654 F.3d 618, 630 (6th Cir. 2011) (granting interlocutory review of certification decision and noting that "[g]iven the huge amount of judicial resources expended by

6

class actions, particular care in their issuance is required")

Obviously, both class actions and collective actions contain many of the same practical, logistical, fairness and due process concerns. While Rule 23(f) review is circumscribed, see, In re Delta Air Lines, 310 F.3d 953, 958-60 (6th Cir. 2002), it is a potential avenue for relief not available to collective action litigants. Litigants in collective actions are left with § 1292(b) as the primary avenue for an interlocutory appeal. Even though the discretionary review contemplated by Section 1292(b) does "not provide relief in every case," it can "serve as [a] useful safety valve' for promptly correcting serious errors." Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 111 (2009) (citation omitted). This case calls out for that discretionary review.

Whether the Court erred in declining to decertify remains to be seen, but if it did it would be a significant error that would materially affect the outcome of the lawsuit. This case is different from the majority of collective action cases in that it is far past the initial certification stage, discovery has closed, and it is in a posture to be tried over the course of several weeks.

Some 60 Plaintiffs and 40 representatives for the Defendants are expected to testify in a trial that is intended to resolve the case as to all parties, including the almost 1,740 technicians who have opted into the case. If the certification decision is wrong, the trial would be a colossal waste of time, money and expense for all concerned, except, perhaps, to the extent it provides leverage for settlement, a factor which weighs in favor of interlocutory review. See, In re Life Investors Ins. Co. of America, 2010 WL 5185830 at *1 (6th Cir. June 21, 2010) ("unique factors in this case that increase the pressure for a settlement" is a factor supporting review under Rule 23(f)); Espenscheid, 705 F.3 at 776 (it is inpermissable, but "realistic conjecture" that most class actions will not be tried but will be settled once class is certified). There are no advantages to trying this case twice.

7

**B.**

A substantial ground for difference of opinions exists regarding the correctness of this Court's decision refusing to decertify the collective action. As indicated, the Seventh Circuit reached a different conclusion in Espenscheid, a case presenting analogous facts. Nevertheless, this Court distinguished Espenscheid for two main reasons. First, the Espenscheid "decision is based upon a premise which the Sixth Circuit has not specifically endorsed." (Docket No. 884 at 17). Second, the plaintiffs in Espenscheid "'[e]ssentially asked the district judge to embark on a shapeless, freewheeling trial that would combine liability and damages and would be virtually evidence-free so far as damages were concerned,'" but in this case, "Plaintiffs' counsel have made the effort that was lacking in Espenscheid." (Id. at 16, quoting Espenscheid, 705 F.3d at 776).

Turning to the first point, the Seventh Circuit in Espenscheid observed that "despite the difference between a collective action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, . . . there isn't a good reason to have different standards for the certification of the two different types of action and the case law has largely merged the standards, though with some terminological differences." Id. at 772. In doing so, the court cited various authorities (including one of its own prior cases and a decision from the Tenth Circuit), but also cited O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 584-86 (6th Cir. 2009) wherein the Sixth Circuit explicitly held that there is a distinction between collective actions under the FLSA and class actions under Rule 23, and that it is improper to "apply a Rule 23-type analysis" in FLSA collective actions because Rule 23 "is a more stringent standard than is statutorily required."

To be sure, the fact that there may be a split in circuit authority is not a basis for interlocutory

8

review under Section 1292(b), at least where the Sixth Circuit has explicitly decided the issue. See, In re Miedzianowski, 2013 WL 4436545 at *2 ("the relevant inquiry [is] whether there is a circuit split on a question that our own circuit has not answered. Where our circuit has answered the question, the district court is bound by our published authority. And so are we"). Although the Sixth Circuit in O'Brien held that the "district court implicitly and improperly applied a Rule 23-type analysis when it reasoned that the plaintiffs were not similarly situated," it went on to note that it did "not purport to create comprehensive criteria for informing the similarly situated analysis." O'Brien, 575 F.3d at 584-85. Additionally, while finding that "applying the criterion of predominance undermines the remedial purpose of the collective action device," the Sixth Circuit also stated that "[w]e do not suggest that aspects of Rule 23 could never be applied to a FLSA collective action." Id. at 585 & 586.

In this case, "Defendants question whether allowing a case such as this one—that is, a case in which the *proof of liability, proof of damages*, and the *defenses available to be raised* are all highly individualized—to proceed on a collective basis violates the United States Supreme Court's holdings in" Wal-Mart and Comcast, (Docket No. 897 at 3, italics in original), both of which were decided in the context of Rule 23 class actions. Plaintiffs argue that "the Sixth Circuit [in O'Brien] has all but ruled that Comcast and Wal-Mart have no application in the Section 216(b) collective action context." (Docket No. 914).

O'Brien preceded both Wal-Mart and Comcast. Moreover, the "crux" of Wal-Mart was the question of commonality under Rule 23, while Comcast indicates that courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the class-wide theory of liability and capable of measurement on a class-wide basis. The teachings of both

9

cases may not necessarily be barred by O'Brien.

This leads to the second point. While Plaintiffs have made an effort to address trial manageability concerns, questions remain as to whether this case is suitable for collective action treatment in light of the fact that the determination of damages may be closely intertwined with the determination of liability, as well as questions as to Plaintiffs' proposed method for calculating damages on a class-wide basis.

## C.

Finally, § 1292(b) requires that the resolution of a "controlling question of law ... may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "This is not a difficult requirement to understand." McFarlin, 381 F.3d at 1259. "It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." Id.

Were this a "garden variety" FLSA lawsuit as Plaintiffs assert, (Docket No. 914 at 2), the Court would readily concede that a § 1292(b) appeal does not lie. See, In re Delta Air Lines, 310 F.3d at 959-60 (noting that "the Rule 23(f) appeal is never to be routine," but that (1) "[i]f the class certification decision essentially tells the tale of the litigation, there is strong support for interlocutory review"; (2) "[t]he case that raises a novel or unsettled question may also be a candidate for interlocutory review," and (3) "the posture of the case is relevant."). As already pointed out, however, this is far from a typical FLSA case such that resolution of the certification question will materially advance the final resolution of this case.

The Court recognizes that this case has been pending for many years, yet a relatively short delay in the scheme of things will be nothing compared to trying this case as a collective action, only

to find out perhaps much later that the certification decision was wrong, and that the initial trial was for naught.  It would be much better for all concerned to know that now, rather than later.  <u>Cf</u>, <u>In re City of Memphis</u>, 293 F.3d at 351 (citation omitted) ("'When litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.'").

**IV.**

For the foregoing reasons, Defendants' motion to certify the decertification issue will be granted, but DirecTV's motion to certify the successor liability issue will be denied.  Further, in light of the looming trial date, the Court will stay further proceedings in this Court pending a decision by the Sixth Circuit.

An appropriate Order will be entered.

Kevin H. Sharp
United States District Judge

11
